UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES TAYLOR,

       Plaintiff,

v.

       CASE NO. 11-15683
       HON. LAWRENCE P. ZATKOFF

RYAN STUCK, KEVIN PARVIZ,
ANTHONY SCHEMBRI, CITY OF
YPSILANTI, and COUNTY OF
WASHTENAW

       Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on March 28, 2012.

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendants Anthony Schembri and City of Ypsilanti's Motion to Dismiss [dkt 8] and Defendants Kevin Parviz, Ryan Stuck, and County of Washtenaw's Motion to Dismiss [dkt 10]. Defendants Schembri and City of Ypsilanti's motion has been fully briefed. Plaintiff, however, did not file a response to Defendants Kevin Parviz, Ryan Stuck, and County of Washtenaw's motion, and the time to do so has expired. *See* E.D. Mich. L.R. 7.1(e)(1). The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decisional process would not be significantly aided by oral argument. Therefore,

pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For reasons set forth below, Defendants Anthony Schembri and City of Ypsilanti's Motion to Dismiss is GRANTED and Defendants Kevin Parviz, Ryan Stuck, and County of Washentenaw's Motion to Dismiss is DENIED as moot.

## II. BACKGROUND

### A. FACTUAL BACKGROUND

The facts are presented below as set forth in Plaintiff's Complaint, and although the Court assumes the allegations are true for purposes of deciding the Motions, no determination of the accuracy or truth of such allegations has been made.

Plaintiff, at the age of 19, worked at a party store located at 213 Pearl Street, Ypsilanti, Michigan. On March 18, 2011, at some point during the day, there was insufficient money in the cash registers to make sales. Plaintiff was told to obtain additional money for the cash registers from the local bank. Aware of the fact that sales would not continue until he returned, Plaintiff jogged down Pearl Street toward the bank, located a short distance away at 7 W. Michigan Avenue.

Meanwhile, Defendant Ryan Stuck ("Deputy Stuck") and Defendant Kevin Parviz ("Detective Parviz", and collectively "County Officers") of the Washtenaw County Sheriff's Department were parked at the corner of North Washington and Pearl streets. The County Officers were in plain clothes and sitting in an unmarked Ford passenger car. They observed Plaintiff, who is described as a "black male wearing a black shirt and blue jeans," jog past. Pl.'s Compl. ¶ 35. Defendant Anthony Schembri ("Officer Schembri") of the Ypsilanti Police Department was also on duty. He observed a "black make wearing a black colored tee shirt, and black jeans running southbound on the sidewalk of N. Huron." Pl.'s Compl. ¶ 38. Officer Schembri was suspicious of

2

Plaintiff and proceeded to stop him. In the process of circling the block, Officer Schembri made contact with the County Officers.

While all three officers attempted to locate Plaintiff, he had obtained money from the bank and was returning to the party store. County Officers heard no transmissions over their radio of any crime reports. Nonetheless, as Plaintiff jogged back by their car, Deputy Stuck exited the vehicle and yelled "Hey!" toward Plaintiff. Pl's Compl. ¶ 59. Plaintiff was unaware that Deputy Stuck, who was not in uniform, was a police officer, but he proceeded to slow down. Deputy Stuck then made contact with Plaintiff, grabbing him and pushing him into the entrance of a vacant building. The force caused Deputy Stuck and Plaintiff to break through the glass entry door of the vacant building. Plaintiff was then placed in handcuffs by Officer Schembri and Deputy Stuck.

After the arrest, Officer Schembri questioned Plaintiff as to why he was running, which Plaintiff replied that he was obtaining money from the bank. The officers noticed the money that Plaintiff was holding. Officer Schembri then searched Plaintiff and, finding no illegal contraband, placed him in a police patrol car. Plaintiff's injuries were then assessed, and he was told that it would cost him "several hundred dollars to be transported to the hospital by ambulance." Pl's. Compl. ¶ 74. Eventually, Plaintiff was transported "privately" to the hospital. Pl's. Compl. ¶ 75. He was not charged with any crime as a result of the arrest.

### B. PROCEDURAL BACKGROUND

On September 30, 2011, Plaintiff filed this action in the Washtenaw County Circuit Court—a Michigan state court—asserting that Defendants violated Plaintiff's rights protected under the Fourth and Fourteenth Amendments as applied through 42 U.S.C. §§ 1983 and 1985. The claims against Defendants City of Ypsilanti ("the City") and Washtenaw County ("the County") are based

on the fact that they employ Defendant police officers and their "policies, practices, and customs, which lead to [the] actions and violations alleged in [the] complaint." Pl's Compl. ¶ 81–84. Plaintiff also asserted six various state-law claims against Defendants.

On December 29, 2011, Defendants removed the action to this Court.[1] On January 18, 2012, the Court dismissed Plaintiff's state-law claims. The sole remaining claims are Plaintiff's Counts I and III, which assert claims under 42 U.S.C. §§ 1983 and 1985. On January 25, 2012, Officer Schembri and the City filed a motion to dismiss (hereinafter referred to as the City's motion). The County Officers and the County then filed a motion to dismiss (hereinafter referred to as the County's motion). While the City's motion was fully briefed, the County and the County Officers were dismissed with prejudice based on a stipulation between the parties. Dkt 13. On March 16, 2012, the parties further agreed to dismiss with prejudice all claims against Officer Schembri. Dkt 14. Therefore, the sole remaining defendant is the City. The Court will proceed with resolving the City's motion to the extent that it applies to the City. The County's motion, however, is denied as moot based on the stipulated dismissal of the County and the County Officers.

### III. LEGAL STANDARD

As a threshold matter, the City concedes that it has already filed an answer and thus, the instant motion is not brought under Fed. R. Civ. P. 12(b)(6), but under Fed. R. Civ. P. 12(c). This procedural technicality, however, has minimal affect on the Court analysis.

The Court's review under Fed. R. Civ. P. 12(c) is the same as the review under Fed. R. Civ. P. 12(b)(6). *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008). Under Fed. R. Civ. P.

---

[1] Officer Schembri and the City were not served the summons and Complaint until November 30, 2011, and December 6, 2011.

12(b)(6), the Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in that plaintiff's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than a bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). Thus, the plaintiff must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). *See also Ashcroft v. Iqbal*, __ U.S. ___, 129 S. Ct. 1937, 1953 (2009).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2000). If, in deciding the motion, the Court considers matters outside the pleadings, the motion will be treated as one for summary judgment pursuant to Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d).

## IV. ANALYSIS

### A. COUNT I: 42 U.S.C. § 1983

In Count I, Plaintiff asserts that the City is liable for the actions of Officer Schembri because the City employed him on the date that these events occurred and because of the City's "policies, practices, and customs." *See* Pl.'s Compl. ¶ 83–84. There are no other allegations in his Complaint that relate to the City's "policies practices, and customs."[2] A municipal or governmental entity can

---

[2] In Plaintiff's response to the City's motion, Plaintiff agrees to dismiss without prejudice any claim under § 1983 against the City pending the outcome of discovery. Plaintiff states that any operative facts establishing a policy, practice, and custom are in possession of Defendants. Based on

be found liable for the violation of a constitutionally protected right under § 1983 only if the plaintiff can establish that an officially executed policy, or the toleration of a custom of such municipality or governmental entity, leads to, causes or results in the deprivation of such rights. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). A municipality, however, may not be held vicariously liable for the actions of its employees. *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (citing *Monell*, 436 U.S. at 665–83). As the Supreme Court recently explained:

> Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. *Monell*, 436 U.S., at 691; *see id.*, at 694. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *See ibid.*; *Pembaur*, supra, at 480–481; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168 (1970). These are "action[s] for which the municipality is actually responsible." *Pembaur*, supra, at 479–480.
>
> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 822–823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*"). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." [*City of Canton v. Harris*, 489 U.S. 378, 388 (1989)]. Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.*, at 389.

---

Plaintiff's concessation, the Court finds it proper to dismiss Count I against the City. The Court, however, is troubled by the actions that followed the filing of Plaintiff's response. Since the filing of Plaintiff's response, all Defendants (except for the City) have been dismissed. Thus, the only discovery that would remain, is discovery pertaining to the claims against the City. To that extent, the Court, proceeding in caution, will address whether Plaintiff has stated a claim against the City.

> "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." [*Bd. of Cnty. Comm'rs. v. Brown*, 520 U.S. 397, 410 (1997)]. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. *Id.*, at 407. The city's "policy of inaction" in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." *Canton*, 489 U.S., at 395 (O'Connor, J., concurring in part and dissenting in part). A less stringent standard of fault for a failure-to-train claim "would result in de facto respondeat superior liability on municipalities . . . ." *Id.*, at 392; *see also Pembaur*, supra, at 483 (opinion of Brennan, J.) ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials . . .").

*Connick v. Thompson*, 131 S. Ct. 1350, 1359–60 (2011) (parallel citations omitted).

Here, Plaintiff does not make any factual allegations that state a plausible claim for relief. First, Plaintiff's allegation that the City is liable for the actions of Officer Schembri merely because he was employed by the City is foreclosed by Supreme Court precedent. As Supreme Court precedent dictates, the City cannot be held vicariously liable for the actions of its employees. *See Connick*, 131 S. Ct. at 1359–60; *Pembaur*, 475 U.S. at 479; *Monell*, 436 U.S. at 665–83. Thus, this claim fails as a matter of law.

Second, Plaintiff's only other allegation is that the City is liable due to its "policy, practice and customs." Pl.'s Compl. ¶ 84. Plaintiff, however, does not elaborate on this allegation and does not identify any policy, practice, or custom of the City. There also are no factual allegations that the City was deliberately indifferent to Plaintiff's constitutional rights. Even assuming Plaintiff had included additional allegations as to a policy, practice or custom, Plaintiff further fails to allege how any conduct on the part of the City subjected Plaintiff to the alleged deprivation of his rights. *See*

7

*Monell*, 436 U.S. at 692. To survive the City's Motion to Dismiss, Plaintiff must allege more than the conclusory legal statement that the City's "policy, practice, and customs" caused Plaintiff injury. *See Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In sum, Plaintiff does not make any *factual* allegations sufficient to defeat the City's Motion to Dismiss. He does not allege, other than a single conclusory statement, that any of the constitutional violations set forth in his Complaint resulted from inadequate training or policies that suggest the City was responsible for the alleged constitutional violations. Accordingly, the City is entitled to judgment on the pleadings with respect to Count I.

### B. COUNT III: 42 U.S.C. § 1985(3)

In Count III, Plaintiff alleges that Defendants conspired to deprive Plaintiff of equal protection of the laws or of equal privileges and immunities of the laws under 42 U.S.C. § 1985(3). Subsection 1985(3) provides that:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . whereby another is injured in his person or property, . . . the party so injured or deprived may have an action for the recovery of damages . . . against any one or more of the conspirators.

42 U.S.C. § 1985(3).

Plaintiff's allegations in his Complaint fail to specifically allege or provide any details as to how the City conspired with other Defendants to injure or deprive Plaintiff. Notably, Plaintiff also

provides no argument or legal authority that establishes that the City can be held liable under § 1985(3). Therefore, the City is granted judgment on the pleadings with respect to Count III.

### C. PLAINTIFF'S REQUEST TO AMEND

Plaintiff requests in a section of his response to the City's motion that he should be entitled to amend his Complaint if the Court determines that Plaintiff has failed to sufficiently plead his claims.

With respect to Plaintiff's request for leave to file an amended Complaint, a court should grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Among the Court's considerations in deciding whether to allow an amendment are "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failures to cure deficiencies by the previous amendments, undue prejudice to the opposing party, and futility of amendment." *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001). "[A] motion to amend a complaint should be denied if the amendment . . . would be futile." *PT Pukuafu Indah v. United States Sec. & Exch. Comm'n*, No. 09-10943, 2009 U.S. Dist. LEXIS 92997, at *3 (E.D. Mich. Oct. 6, 2009) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "An amendment is futile when the proposed amendment fails to state a claim upon which relief can be granted and thus is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Id.* at *3 (citing *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)).

The Court does not find that justice requires that Plaintiff have an opportunity to amend his Complaint. First, Plaintiff argues that his Complaint was written to meet the "notice pleading" standard required by Michigan state courts, not the heightened pleading standard required by federal courts. The Court is unpersuaded. Plaintiff had adequate opportunity to amend his Complaint. The

Complaint was removed to this Court on December 29, 2011. At that point, Plaintiff had notice that he was subject to the rules of civil procedure that govern federal cases, which include the federal court's pleading standard. Plaintiff did not request leave from the Court to amend his Complaint, and he still has not formally done so through proper motion practice. Second, Plaintiff states that he sought concurrence from Defendants to amend his Complaint on January 24, 2012, which was denied. Once concurrence was denied, Plaintiff still failed to request leave from the Court to amend his Complaint. Plaintiff therefore was aware that he was subject to the pleading standard used in federal court, and Plaintiff's repeated delay does not justify amendment.

Moreover, Plaintiff has dismissed all Defendants, except for the City. With respect to the City, the Court has already found that Plaintiff fails to state a claim against it. The Court further finds that Plaintiff would be unable to cure this deficiency through an amendment of his Complaint. Plaintiff concedes in his response brief that he has no factual allegations regarding the policy, practice, and customs of the City. Accordingly, the Court denies Plaintiff leave to amend his Complaint.

## V. CONCLUSION

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that Defendants Anthony Schembri and City of Ypsilanti's Motion to Dismiss [dkt 8] is GRANTED.

IT IS FURTHER ORDERED that and Defendants Kevin Parviz, Ryan Stuck, and County of Washtenaw's Motion to Dismiss [dkt 10] is DENIED AS MOOT.

IT IS FURTHER ORDERED that Plaintiff's request for leave to amend his Complaint is DENIED.

IT IS FURTHER ORDERED that Plaintiff's claims against Defendant City of Ypsilanti are

DISMISSED. Because all other Defendants were dismissed by stipulation of the parties and Defendant City of Ypsilanti was the sole remaining defendant, this case is closed.

    IT IS SO ORDERED.

                                      S/Lawrence P. Zatkoff
                                      LAWRENCE P. ZATKOFF
                                      UNITED STATES DISTRICT JUDGE

Dated:  March 28, 2012

## CERTIFICATE OF SERVICE

    The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 28, 2012.

                                      S/Marie E. Verlinde
                                      Case Manager
                                      (810) 984-3290